IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INDIGENOUS PEOPLE OF BIAFRA, a )
United Kingdom registered Community )
Interest Company, )
 )
    *Plaintiff*, )        Civil Action No. 1:21-cv-2068 (JMC)
 )
    *v.* )
 )
ANTONY BLINKEN, Secretary of State, in his )
official capacity, *et al.*, )
 )
    *Defendants*. )
 )

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

ARGUMENT ..............................................................................................................................2

I.  Plaintiff Does Not Meaningfully Counter Defendants' Arguments Regarding Standing. .................2

     A.       Plaintiff Has Not Demonstrated Membership for Associational Standing. .................2

     B.       The Does Lack Individual Standing. .................4

II.  Plaintiff Has Not Asserted Any Actionable Claim. ...........................................................8

     A.       Plaintiff Has Identified No Law Creating a Private Cause of Action under the Leahy Laws     8

     B.       The Alleged Facts Fail to State Any Scenario Triggering Application of the Leahy Laws.    10

III.  Plaintiff's APA Claims Are Committed to Agency Discretion by Law ..........................................12

IV.  Plaintiff's Claims Raise a Non-Justiciable Political Question. ...........................................13

V.  The Court Should Decline to Provide Discretionary Relief. ...............................................18

CONCLUSION ............................................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*AARP v. U.S. Equal Emp. Opportunity Comm'n*,
226 F. Supp. 3d 7 (D.D.C. 2016) ............................................................................................3

*Abulhawa v. U.S. Dep't of Treasury*,
239 F. Supp. 3d 24 (D.D.C. 2017), *aff'd*, No. 17-5158, 2018 WL 3446699

(D.C. Cir. Jun 19, 2018) ...........................................................................................................7

*Abusharar v. Hagel*,
77 F. Supp. 3d 1005 (C.D. Cal. 2014) .............................................................................9, 15, 18

*Al-Aulaqi v. Obama*,
727 F. Supp. 2d 1 (D.D.C. 2010) ...........................................................................................14

*Alexander v. Sandoval*,
532 U.S. 275 (2001) .............................................................................................................8, 9

*Am. Freedom L. Ctr. v. Obama*,
821 F.3d 44 (D.C. Cir. 2016) ..................................................................................................5

*Am. Lung Ass'n v. EPA*,
985 F.3d 914 (D.C. Cir. 2021) .............................................................................................4, 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................10, 12

*Atl. Tele-Network v. Inter-American Dev. Bank,*,
251 F. Supp. 2d 126 (D.D.C.2003) .........................................................................................9

*Baker v. Carr*,
369 U.S. 186 (1962) ............................................................................................... 13, 14, 15, 17

*Banzhaf v. Smith*,
737 F.2d 1167 (D.C. Cir. 1984) .............................................................................................13

*Barenblatt v. United States*,
360 U.S. 109 (1959) ...............................................................................................................13

*Campbell v. Clinton*,
203 F.3d 19 (D.C. Cir. 2000) ..................................................................................................17

*Cannon v. Univ. of Chi.*,
441 U.S. 677 (1979) .................................................................................................................8

*Clapper v. Amnesty Int'l.*,
  68 U.S. 398 (2013) ........................................................................................................ 5

*Clark v. United States*,
  609 F. Supp. 1249 (D. Md. 1985) .................................................................................. 9

*Conf. of State Bank Supervisors v. Off. of Comptroller of Currency*,
  313 F. Supp. 3d 285 (D.D.C. 2018) ............................................................................... 4

*Corrie v. Caterpillar, Inc.*,
  503 F.3d 974 (9th Cir. 2007) ........................................................................................ 15

*Crockett v. Reagan*,
  720 F.2d 1355 (D.D.C. 1983) ................................................................................... 14,15

*Ctr. for Sustainable Econ. v. Jewell*,
  779 F.3d 588 (D.C. Cir. 2015) ........................................................................................ 3

*Ctr. for Bio. Diversity v. U.S. Dep't of Interior*,
  563 F.3d 466 (D.C. Cir. 2009) ........................................................................................ 5

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Educ.*,
  48 F. Supp. 3d 1 (D.D.C. 2014) ...................................................................................... 6

*El-Shifa Pharm. Indus. Co. v. United States*,
  607 F.3d 836 (D.C. Cir. 2010) ......................................................................... 13, 14, 17

*Fed. Forest Res. Coal. v. Vilsack*,
  100 F. Supp. 3d 21 (D.D.C. 2015) .................................................................................. 5

*Fryshman v. U.S. Comm'n for Pres. of Am.'s Heritage Abroad*,
  422 F. Supp. 3d 1 (D.D.C. 2019) .................................................................................... 7

*Harbury v. Hayden*,
  522 F.3d 413 (D.C. Cir. 2008) ...................................................................................... 17

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) .................................................................................................... 3, 4

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
  478 U.S. 221 (1986) ..................................................................................................... 14

*Kialegee Tribal Town v. Zinke*,
  330 F. Supp. 3d 255 (D.D.C. 2018) .............................................................................. 10

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*,
  104 F.3d 1349 (D.C. Cir. 1997) .................................................................................... 12

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ..................................................................................................... 4

*Mobarez v. Kerry,*
  187 F. Supp. 3d 85 (D.D.C. 2016) ............................................................................. 14

*Sanchez-Espinoza v. Reagan,*
  770 F.2d 202 (D.C. Cir. 1985) ................................................................................... 18

*Schneider v. Kissinger,*
  412 F.3d 190 (D.C. Cir. 2005) ................................................................................... 15

*Siegel v. U.S. Dep't of Treasury,*
  304 F. Supp. 3d 45 (D.D.C. 2018) ............................................................................... 7

*Somali Dev. Bank v. United States,*
  508 F.2d 817 (Ct. Cl. 1974) ......................................................................................... 9

*Talenti v. Clinton,*
  102 F.3d 573 (D.C. Cir. 1996) ..................................................................................... 7

*Touche Ross and Co. v. Redington,*
  442 U.S. 560 (1979) ..................................................................................................... 8

*Tozzi v. U.S. Dep't of Health & Human Servs.,*
  271 F.3d 301 (D.C. Cir. 2001) ..................................................................................... 5

*Turlock Irr. Dist. v. FERC,*
  786 F.3d 18 (D.C. Cir. 2015), *petition for cert. docketed sub nom. Westmoreland Mining Holding,*

  *LLC v. EPA*, 142 S. Ct. 418 (2021) ............................................................................. 5

*United States v. Curtiss–Wright Exp. Corp.,*
  299 U.S. 304 (1936) ................................................................................................... 15

*Univs. Rsch. Ass'n, Inc. v. Coutu,*
  450 U.S. 754 (1981) ..................................................................................................... 8

*West v. Lynch,*
  845 F.3d 1228 (D.C. Cir. 2017) ................................................................................... 7

*Whitmore v. Arkansas,*
  495 U.S. 149 (1990) ..................................................................................................... 4

*Zivotofsky ex rel. Zivotofsky v. Clinton,*
  566 U.S. 189 (2012) ............................................................................................. 17, 18

iv

**Statutes**

5 U.S.C. § 701 ...........................................................................................................11

10 U.S.C. § 362.............................................................................................1, 11, 12, 16

22 U.S.C. § 2378d..........................................................................................1, 11, 12, 16

22 U.S.C. § 2751 ...................................................................................................... 7, 11

22 U.S.C. § 2761(m)..................................................................................................7

22 U.S.C. § 2794(9) .......................................................................................................7

Bipartisan Budget Act,
   Pub. L. No. 117-50, 135 Stat. 407 (2021) ............................................................1

Foreign Assistance Act of 1961,
   Pub. L. No. 87-195, 75 Stat. 424 (1961).................................................................1

**Legislative Materials**

163 Cong. Rec. S. 4753 (Aug. 2, 2017) ............................................................... 11, 16

Nina M. Serafino *et al.*, Cong. Rsch. Serv., R43361, "Leahy Law" Human Rights Provisions And Security Assistance: Issue Overview (2014) ......................................................11

Paul K. Kerr, Cong. Rsch. Serv., RL 31675, Arms Sales: Congressional Review Process (2021) 10, 11

**Regulations**

22 C.F.R. § 120.7(b)(1) .................................................................................................7

22 C.F.R. § 121.1............................................................................................................7

Arms Sales Notification,
   82 Fed. Reg. 40,757 (Aug. 28, 2017)................................................................ 11, 16

**Other Authorities**

DSCA, Press Release, Government of Nigeria –A-29 Super Tucano Aircraft, Weapons, & Associated Support (Aug. 3, 2017),
   https://perma.cc/CAY6-99HH ...............................................................................11

The Defence Times Nigeria, *Research & Development: United States Army Corps of Engineers secures $36.1 million contract,*
   https://perma.cc/JNK4-RUXY.................................................................................11

## INTRODUCTION

The instant suit arises from a disagreement by Plaintiff Indigenous People of Biafra ("Plaintiff") with the U.S. Government's decision to sell 12 A-29 Super Tucano Aircraft ("the A-29 Aircraft") to Nigeria. Plaintiff assumes that delivery should have triggered statutory obligations for Defendants[1] under the Leahy Laws ("Amendments" in the Complaint),[2] and, if applied, that such laws would have prevented the delivery of the planes. Plaintiff wrongly conflates statutory authority governing military sales with that applicable to foreign assistance, however, and thus has pursued its claims here in error and without legal support. That vulnerability is demonstrated by Defendants' Motion to Dismiss, ECF No. 11, and its Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Mem. in Supp." and, together with the Motion to Dismiss, the "Motion"), ECF No. 11-1. Plaintiff's Opposition to the Motion largely ignores all of the arguments made by Defendants and the great weight of the legal authority cited therein. *See generally* Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Opposition" or "Opp'n"), ECF No. 13. Consequently, and for the reasons outlined in the Motion itself, the Court should dismiss this suit. *See generally* Mem. in Supp.

---

[1] As Defendants Antony Blinken, Secretary of State, and Lloyd Austin, Secretary of Defense, are sued in their official capacities, they are referred to herein, when discussing the instant suit, as part and parcel of the agencies they respectively govern, the U.S. Department of State ("the State Department") and the U.S. Department of Defense (the "DoD" and, together with the State Department, "Defendants").

[2] The "Leahy Laws," herein, refers collectively to two separate statutory provisions that impose similar restrictions on separate categories of assistance provided by the U.S. Government to foreign security forces. One provision (the "State Leahy Law"), Section 620M of the Foreign Assistance Act of 1961 ("FAA"), Pub. L. No. 87-195, 75 Stat. 424, current through Pub. L. No. 117-50, 135 Stat. 407 (2021) (22 U.S.C. § 2378d (2014)), applies to certain "assistance" provided by the Secretary of State. 22 U.S.C. § 2378d(a). The other applies to the DoD's use of funds for "training, equipment, or other assistance" for units of foreign security forces. 10 U.S.C. § 362(a)(1).

Dismissal is warranted for any of five reasons.  First, this Court lacks jurisdiction to address Plaintiff's claim for lack of standing.  Second, even if Plaintiff could demonstrate Article III standing, Plaintiff has stated neither an actionable claim for relief nor a claim upon which relief can be granted.  Third, the authority to enter into foreign military sales—and thus deliver the A-29 Aircraft to Nigeria—as well as to make decisions regarding the use of funds appropriated by Congress to the Executive Branch (thus triggering application of the Leahy Laws)—has been committed to Defendants' discretion by law.  Fourth, Plaintiff's claims raise a non-justiciable political question.  Lastly, the Court should decline to enter any discretionary relief in this case because it would be inappropriate for the Court to weigh in on a sensitive matter involving foreign affairs.

## ARGUMENT

### I.  Plaintiff Does Not Meaningfully Counter Defendants' Arguments Regarding Standing.

#### A.  Plaintiff Has Not Demonstrated Membership for Associational Standing.

In their Motion, Defendants challenged Plaintiff's ability to bring this suit based on associational standing given the limited information provided in the Complaint.  *See* Mem. in Supp. at 12–16.  Although Plaintiff concedes that it relies on associational standing, Opp'n at 3, it makes no effort to satisfy its burden and demonstrate its capacity to represent others as an association.  Plaintiff's sole response to Defendants' challenge is that its identified members—each a John Doe (together, the "Does")—are "genuine not bogus members" of Plaintiff who face stark repercussions if personal details regarding their identities are revealed.  *Id.*  That explanation does not address the issues raised in the Motion regarding the Does' actual membership in Plaintiff, however: the

2

representation alleged must in some way be meaningful and not *pro forma*.  *See* Mem. in Supp. at 12–16.

Even assuming *arguendo* that fear of retribution combined with the identical, limited information provided in the Complaint about each Doe were sufficient to accept that each is a member of Plaintiff, that alone is not enough to demonstrate membership for Plaintiff's associational standing.  *See AARP v. U.S. Equal Emp. Opportunity Comm'n*, 226 F. Supp. 3d 7, 16 (D.D.C. 2016) (noting that, regardless of whether an organization is a traditional membership organization or its functional equivalent, "it is equally clear that a mere assertion that an individual is a 'member' of an organization is not sufficient to establish membership.").  Notably, Plaintiff makes no attempt—though challenged in the Motion—to demonstrate that it is a membership organization, explain how it is organized, led, or operated, or show that it represents individuals with indicias of membership in Plaintiff.  *See generally* Complaint for Violation of Leahy Amendments ("Compl.") ECF No. 1; *see also* Mem. in Supp. at 12–16.  Having failed to do so, Plaintiff likewise fails to allege (let alone establish) it is either a traditional membership organization or the functional equivalent of one.  *Cf. Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 596 (D.C. Cir. 2015) (finding associational standing where declarations showed plaintiff was a membership organization representing members' interests); *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977) (indicia of membership can demonstrate organization); *AARP*, 226 F. Supp. 3d at 16-17 (citations omitted) (discussing the "gap in the associational standing case law" between traditional and functional equivalent organizations).  Thus, and for the reasons more fully outlined in the Motion, Plaintiff fails to demonstrate associational standing, and its Complaint should be dismissed.

3

### B. The Does Lack Individual Standing.

Also as detailed in the Motion, Plaintiff further lacks standing given the absence of allegations indicating Defendants are the cause of any redressable, imminent injury to the Does. *See* Mem. in Supp. 16–24. Among other things, when an organization is suing on behalf of its members, it must demonstrate that "its members would otherwise have standing to sue in their own right." *Hunt*, 432 U.S. at 343. This means that, even if one assumes Plaintiff is able to show that it is a membership organization for standing purposes, it must also show, for at least one of the Does: (1) an "injury in fact—an invasion of a legally protected interest which is [a] concrete and particularized" and  [b]"actual or imminent, not conjectural or hypothetical"; (2) a "causal connection between the injury and the conduct complained of"; and (3) "it must be 'likely', as opposed to merely 'speculative', that the injury will be redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61(1992) (cleaned up).

Here, the allegations regarding injury-in-fact, causation, and redressability fail for multiple reasons, as detailed in the Motion and largely ignored by Plaintiff in its Opposition. *Compare* Mem. in Supp. at 16–24, *with* Opp'n at 4–7. Overall, the Complaint's allegations are highly generalized and conclusory, speculative and attenuated in the extreme, and absent attribution to the U.S. Government (being centered on the actions of third parties, *i.e.*, Nigerian government officials). *Cf. Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (more than a "possible future injury" allegedly caused by the United States is necessary to establish standing for prospective relief); *Conf. of State Bank Supervisors v. Off. of Comptroller of Currency*, 313 F. Supp. 3d 285, 296 (D.D.C. 2018) (finding "speculative and conclusive language like 'significant risks'" insufficient to establish standing); *Am. Lung Ass'n v. EPA*, 985 F.3d 914, 990 (D.C. Cir. 2021) ("litigants cannot establish an Article III

4

injury based on the independent actions of some third party not before [the] court.") (quoting *Turlock Irr. Dist. v. FERC*, 786 F.3d 18, 25 (D.C. Cir. 2015)), *petition for cert. docketed sub nom. Westmoreland Mining Holding, LLC v. EPA*, 142 S. Ct. 418 (2021); *Clapper v. Amnesty Int'l.*, 68 U.S. 398, 410–14 (2013) (plaintiffs lack standing where injury would occur only after a series of third parties exercised their judgment in a certain way); *Ctr. for Bio. Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009) ("The more attenuated or indirect the chain of causation between the government's conduct and the plaintiff's injury, the less likely the plaintiff will be able to establish a causal link sufficient for standing."). Each weakness is itself fatal to Plaintiff's assertion of standing for any of the Does, for the reasons fully explained in Defendants' Motion. *See* Mem. in Supp. at 16–24.

To provide an example, however: although Plaintiff claims the Does fear "imminent death or serious bodily injury traceable to the actions of Defendants in selling and delivering [the] A-29 [Aircraft] to Nigeria's security services," Opp'n at 4, Plaintiff fails to show "that 'the agency action is at least a substantial factor motivating the third parties' actions.'" *Am. Freedom L. Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016) (quoting *Tozzi v. U.S. Dep't of Health & Human Servs.*, 271 F.3d 301, 308 (D.C. Cir. 2001)). Here, the imminent injuries alleged to pose a persistent threat to the Does would be the direct result of purported (and future speculative) actions by Nigerian government officials, not the U.S. Government. And, Plaintiff itself admits any threat to the Does presently would be part of a decades-long history of purported persecution by current Nigerian officials. *See* Opp'n at 4; Compl. at ¶¶ 23–30; *cf. Am. Freedom L. Ctr.*, 821 F.3d at 49; *Fed. Forest Res. Coal. v. Vilsack*, 100 F. Supp. 3d 21, 37–40 (D.D.C. 2015) (finding that "a pre-existing downward trend" toward declining timber-harvest levels clearly undermined plaintiffs' standing argument by nullifying any assertion

that the challenged action is itself the cause of the decline and the resulting injury).  Thus, Plaintiff

has not shown that the speculative harm alleged to be imminent to the Does is the result of the sale

of the A-29 Aircraft.  *See Elec. Priv. Info. Ctr. v. U.S. Dep't of Educ.*, 48 F. Supp. 3d 1, 20 (D.D.C. 2014)

(finding that because plaintiffs would not suffer identity fraud unless their universities chose to

disclose their personal information to third-party entities and those entities fraudulently used or

disclosed that information, plaintiffs failed to show that a regulation permitting disclosure was the

cause of their injuries).

Moreover, Plaintiff identifies no authority to support its position that the Does' individual

standing here is legally sound; the only case law from any U.S. court cited by Plaintiff in this section

of the Opposition is merely offered to provide the legal standard for demonstrating standing.  *See*

Opp'n at 4–7.  Plaintiff never actually addresses, for example, case law discussed in the Motion

finding there was no standing to challenge U.S. Government action where a foreign government

engaged in the alleged underlying injurious conduct, *see* Mem. in Supp. at 20 (citations omitted), or

recognizing that an order directing the U.S. Government to take certain actions in the foreign

relations sphere would not redress a plaintiff's injuries given the speculative nature of how foreign

governments or organizations would react, *see id.* at 23–24 (citations omitted).  Plaintiff essentially

concedes the validity of Defendants' legal arguments regarding standing, and chooses instead to rely

on emotional pleas about the purported threat Nigerian officials pose to the Does.  That cannot

meet Plaintiff's burden as regards Defendants.  *See* Mem. in Supp. at 19–24.

Last, in an attempt to demonstrate redressability, Plaintiff assumes Defendants have "vast

leverage" to "obtain the return" of the A-29 Aircraft.  Opp'n at 6.  It cites no legal precedent for this

proposition, however.  *See id.*  Contrary to Plaintiff's assumption, the Arms Export Control Act

("AECA"), 22 U.S.C. § 2751, *et seq.*—the legal authority for the sale of the A-29 Aircraft, *see* Mem. in Supp. at 7–8—provides no mechanism to seek or compel the return of the planes from Nigeria.[3] *See generally id.* Further, while Plaintiff quotes statements made by State Department officials in relation to their ongoing diplomacy efforts with Nigeria, Opp'n at 6–7, any such statements cannot reasonably be said to demonstrate a legal mechanism to effect the return of the A-29 Aircraft. Plaintiff's reliance on such statements also demonstrates that its claims properly rest in the spheres of foreign affairs and diplomacy, areas where courts are hesitant to tread and which involve issues courts have routinely determined render impossible any discernment of facts necessary to find causation and redressability. *See, e.g., Talenti v. Clinton*, 102 F.3d 573, 575–78 (D.C. Cir. 1996) (no redressability given uncertainty as to how Italy would react to the withholding of foreign assistance); *Abulhawa v. U.S. Dep't of Treasury*, 239 F. Supp. 3d 24, 36 (D.D.C. 2017) (quoting *West v. Lynch*, 845 F.3d 1228, 1237 (D.C. Cir. 2017)) ("'Courts do not lightly speculate how independent actors not before them might' act, and, '[w]hen conjecture is necessary, redressability is lacking.'"), *aff'd*, No. 17-5158, 2018 WL 3446699 (D.C. Cir. Jun 19, 2018); *Fryshman v. U.S. Comm'n for Pres. of Am.'s Heritage Abroad*, 422 F. Supp. 3d 1, 8 (D.D.C. 2019) (quoting *Siegel v. U.S. Dep't of Treasury*, 304 F. Supp. 3d 45, 55 (D.D.C. 2018)) ("[f]ederal courts are simply 'not well-suited to draw the types of inferences regarding foreign affairs and international responses to U.S. policy that Plaintiff's theory of causation posits.'").

---

[3] The AECA provides limited circumstances for the return of fully functioning defense articles that are not significant military equipment. 22 U.S.C. § 2761(m); 22 U.S.C. § 2794(9). The A-29 Aircraft are significant military equipment, and thus would not fall within this provision of the AECA. *See* 22 C.F.R. § 120.7(b)(1); 22 C.F.R. § 121.1, Cat. VIII(a)(2)–(3). In addition, the portion of the AECA governing the return of defense articles only applies where the foreign partner offers the return of the defense articles at issue. *See generally* 22 U.S.C. § 2761(m).

In sum, and for the reasons fully discussed in the Motion, Plaintiff cannot establish Article III standing for any John Doe on injury-in-fact, causation, or redressability grounds.  The Court therefore lacks jurisdiction to hear Plaintiff's claims.

## II.  Plaintiff Has Not Asserted Any Actionable Claim.

### A.  Plaintiff Has Identified No Law Creating a Private Cause of Action under the Leahy Laws

Plaintiff also does not meaningfully counter the arguments made by Defendants in their Motion that there is no cause of action under the Leahy Laws; it cites little to no case law, does not address the vast majority of positions taken by Defendants, and outright ignores legal precedent contrary to its position.  *See generally* Opp'n at 7–10.  For the reasons already fully explained by Defendants, *see* Mem. in Supp. at 25–28, Plaintiff's claims for relief in Counts 1 and 3 of the Complaint should be dismissed because the Leahy Laws do not offer private causes of action to enforce their terms.  Such rights must be conferred by Congress, and require a court to consider if there was "an intent to create not just a private right but also a private remedy."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citation omitted).  Although Plaintiff would wish it otherwise, Opp'n at 7–9, it is not enough for a statute to be "designed to benefit a particular class;" instead, Congress must have intended that statute to be enforced through private litigation.  *Univs. Rsch. Ass'n, Inc. v. Coutu*, 450 U.S. 754, 771 (1981); *see also Touche Ross and Co. v. Redington*, 442 U.S. 560, 568 (1979) (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979)) ("'the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.'").

That intention is wholly absent here, given that the Leahy Laws do not contain the sort of "rights-creating language" that courts have found "critical" in assessing Congress's intent to create

an implied right of action. *Sandoval*, 532 U.S. at 288. Plaintiff does not identify any legal precedent

indicating otherwise (or addressing the case law cited Defendants previously, *see* Mem. in Supp. at

25–28). *See generally* Opp'n at 7–9. Thus, Plaintiff wholly ignores the legal precedent discussed in the

Motion concluding that neither the FAA nor the State Leahy Law created private causes of action.

*Compare id., with* Mem. in Supp. at 27–28 (citing *Abusharar v. Hagel*, 77 F. Supp. 3d 1005, 1006 (C.D.

Cal. 2014) (finding "no private right of action under the [State] Leahy [Law]"); *Clark v. United States*,

609 F. Supp. 1249 (D. Md. 1985) ("The [FAA] . . . does not create standing for any taxpayer or any

private party to sue for its enforcement."); *Atl. Tele-Network v. Inter-American Dev. Bank*, 251 F. Supp.

2d 126,  131 (D.D.C.2003) ("To grant or deny a loan to a foreign nation is a decision fraught with

foreign policy implications. Congress clearly did not confer the power to make such decisions upon

aggrieved private citizens for their personal commercial advantage without regard to the national

interest."); *Somali Dev. Bank v. United States*, 508 F.2d 817, 820 (Ct. Cl. 1974) ("there is no doubt that

the statutory language [of the FAA] . . . was enacted for the benefit of the taxpayers of the United

States and that it confers no right of action on the plaintiffs.")). Plaintiff therefore entirely ignores

all available, relevant law on this score. The Court should similarly disregard Plaintiff's request for

the Court to upend all available case law and, like the *Abusharar* court, instead conclude that no

private right of action exists here. *See* Mem. in Supp. at 25–28.[4]

---

[4] Plaintiff notes that "Defendants do not argue that Congress itself would have standing to seek
judicial enforcement of the Leahy [Laws]." Opp'n at 8 (citation omitted). Defendants need not
make such an argument, however. Plaintiff is not a member of Congress and Defendants'
position—well supported by the law, unlike the position taken by Plaintiff—is that Congress did not
confer a private right of action to enforce the Leahy Laws. Moreover, as detailed in the Motion
itself, Congress built into the process for implementation of the Leahy Laws and the AECA specific
oversight roles for Congress. *See* Mem. in Supp. at 2–7, 37–38. That decision establishes that it is
Congress and not the courts that are intended to check Executive Branch decision making in this
arena.

### B.  The Alleged Facts Fail to State Any Scenario Triggering Application of the Leahy Laws.

In their Motion, Defendants detailed how the Leahy Laws only apply to the furnishing of defense articles—like the A-29 Aircraft—through the use of funds appropriated by Congress to the Executive Branch, *see* Mem. in Supp. at 5–7, and highlighted that Plaintiff's Complaint—instead of alleging a transfer subject to the Leahy Laws—only alleges a direct sale of the A-29 Aircraft (*i.e.*, pursuant to the AECA), *see id.* at 28–30.  This fatal flaw in pleading dooms all of Plaintiff's claims, since—even assuming *arguendo* standing is present and a cause of action is available under the Leahy Laws—Plaintiff has not put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also Kialegee Tribal Town v. Zinke*, 330 F. Supp. 3d 255, 268 (D.D.C. 2018) (dismissing complaint under Rule 12(b)(6) where causal connection not stated in complaint); Mem. in Supp. at 28–30.

Plaintiff believes "it is more than reasonable to infer that the [A-29 Aircraft] did not arrive in Nigeria by spontaneous combustion" because "[t]he use or assistance of State Department or [DoD] salaried employees and equipment must have been involved."  Opp'n at 10.  Plaintiff misapprehends the distinction at issue.  As explained in Defendants' Motion, the Leahy Laws are a tool used by Congress to restrict the use of funds appropriated to the Executive Branch to furnish training, equipment, or other assistance to units of foreign security forces, but not as to direct military sales paid for by a foreign government.  *See* Mem. in Supp. at 4–7, 28–38.  Any purported involvement of Defendants' personnel and equipment, supported by appropriated funds, would not transform a direct military sale to the provision of assistance subject to the Leahy Laws.  *Compare* Paul K. Kerr, Cong. Rsch. Serv., RL 31675, Arms Sales: Congressional Review Process (2021) (providing an

overview of the AECA), *with* Nina M. Serafino *et al.*, Cong. Rsch. Serv., R43361, "Leahy Law"

Human Rights Provisions And Security Assistance: Issue Overview, at 3-4 (2014) (providing an

overview of the Leahy Laws); *see also* 22 U.S.C. § 2751, *et seq.*; 22 U.S.C. § 2378d; 10 U.S.C. § 362.

Plaintiff must actually allege facts permitting an inference of the use of appropriated funds, and it

has not done so; it has only pled facts demonstrating a direct sale under the AECA.  *See generally*

Compl.; *see also* Mem. in Supp. at 29, note 13.  Nor do the materials publicly available—*i.e.*, the

notifications regarding the sale—permit an inference that the transfer relies upon assistance from

the U.S. Government.  *See* DSCA, Press Release, Government of Nigeria –A-29 Super Tucano

Aircraft, Weapons, & Associated Support (Aug. 3, 2017), https://perma.cc/CAY6-99HH (captured

Dec. 14, 2021)) [hereinafter "DSCA Press Release"]; 163 Cong. Rec. S. 4753, 4754-55 (Aug. 2,

2017); Arms Sales Notification, 82 Fed. Reg. 40,757, 40,757-59 (Aug. 28, 2017).[5]

 Plaintiff also believes Defendants misapplied case law in arguing Plaintiff failed to state

claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, because "Defendants

have never proffered an explanation for non-application of the Leahy Law[s] . . . as applied to the

sale and delivery of the [A-29 Aircraft]."  Opp'n at 10.  Plaintiff itself ties the knot here, however,

conceding the transfer was pursuant to a "sale."  Since the transfer involved only a direct sale, the

Leahy Laws did not in any way apply to the transfer.  *See* 22 U.S.C. § 2378d; 10 U.S.C. § 362; *see also*

Mem. in Supp. at 4–7; DSCA Press Release; 163 Cong. Rec. S. 4753, 4754-55 (Aug. 2, 2017); Arms

Sales Notification, 82 Fed. Reg. 40,757, 40,757-59 (Aug. 28, 2017).  As the Leahy Laws did not apply

---

[5] Plaintiff cites to a news article discussing the awarding of a contract to build facilities to house the
A-29 Aircraft in Nigeria to support its belief that the planes were or will be delivered based on some
form of U.S. Government assistance.  Opp'n at 10 (citing https://perma.cc/JNK4-RUXY (captured
Dec. 15, 2021)).  Nothing in that article indicates that the building is supported through assistance or
the use of appropriated funds, however.  *See id.*

to this sale—and since Plaintiff has not alleged facts permitting an inference that the Leahy Laws should have applied to the sale—Plaintiff also has failed to allege facts permitting an inference that the APA required compliance with the Leahy Laws. *Cf. Iqbal,* 556 U.S. at 678. As Plaintiff has not pled any facts demonstrating a scenario triggering application of the Leahy Laws, it has failed to state a claim as to all four of the counts in its Complaint. *See* Mem. in Supp. at 28–30.

### III. Plaintiff's APA Claims Are Committed to Agency Discretion by Law

The general language of the AECA—the statutory authority for the sale of the A-29— renders agency decision making to authorize foreign military sales presumptively unreviewable as it is committed to agency discretion by law. *See* Mem. in Supp. at 31–38; *see also, e.g., Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997) (broad language of the applicable statute "suggests that the State Department policy is unreviewable"). Plaintiff also does not meaningfully address Defendants' arguments regarding all relevant statutory authority here—the AECA, the Leahy Laws, and appropriations acts—being committed to agency discretion by law, and instead proffers (without any citation to actual precedent) that the Leahy Laws "were enacted because Congress distrusted executive branch discretion in arms sales." Opp'n at 11. The question of law before the Court turns on the wording of the statute, however, not speculation about Congressional motives. And the very text of the Leahy Laws demonstrates that Congress granted the Secretaries of State and Defense discretion to except or waive application of the Leahy Laws themselves in certain circumstances. *See* 22 U.S.C. § 2378d(b); 10 U.S.C. § 362(b)–(c).

Plaintiff argues that congressional oversight cannot oust a statute from judicial review, but Plaintiff misunderstands the argument made by Defendants in their Motion. Defendants highlighted for the Court that "the existence of congressional oversight as an enforcement

mechanism" is an indication that "Congress intended to preclude [judicial] review." *Banzhaf v. Smith*, 737 F.2d 1167, 1170 (D.C. Cir. 1984) (citation omitted). Despite Plaintiff's position that Congress has general oversight of all laws, Opp'n at 11 (citing *Barenblatt v. United States*, 360 U.S. 109, 111 (1959)), it is the actual insertion of Congress into the process for authorizing sales under the AECA or assistance pursuant to the Leahy Laws that makes *Banzhaf* relevant here. *See* Mem. in Supp. at 37–38. Plaintiff misunderstands Defendants' argument (*i.e.*, that where Congress inserts itself into a statutorily conferred process required of the Executive Branch it demonstrates an intention to remove such process from judicial review), and instead cites to *Barenblatt*, which acknowledged the general authority possessed by Congress in a prosecution for contempt of Congress. *See Barenblatt*, 360 U.S. at 111 ("Once more the Court is required to resolve the conflicting constitutional claims of congressional power and of an individual's right to resist its exercise."); *see also* Opp'n at 11 (quoting *Barenblatt*). The provisions of all of the relevant or potentially relevant statutory authority here demonstrate that it is the responsibility of Congress, not the courts, to oversee implementation. *See* Mem. in Supp. at 37–38. The general authority of Congress to oversee all law is therefore irrelevant to the specific statutory issue here.

The broad authority conferred by Congress here, combined with the complex issues impacted, demonstrate this area is not one that affords judicially manageable standards for review. For all of the reasons explained in Defendants' Motion, Plaintiff's APA claims should be dismissed as being committed to agency discretion by law. *See* Mem. in Supp. at 31–38.

## IV. Plaintiff's Claims Raise a Non-Justiciable Political Question.

Dismissal is also warranted because Plaintiff's claims raise a non-justiciable political question. *See El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 840 (D.C. Cir. 2010) (quoting *Baker v.*

*Carr*, 369 U.S. 186, 217 (1962) & *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986)).

("The political question doctrine is 'essentially a function of the separation of powers,' and 'excludes

from judicial review those controversies which revolve around policy choices and value

determinations constitutionally committed for resolution to the halls of Congress or the confines of

the Executive Branch.'").  Though Plaintiff maintains that Defendants' position regarding the

political question doctrine "smacks of a counter-constitutional imperial presidency above the law,"

Opp'n at 12, Defendants merely applied the applicable *Baker* factors[6] to what is indisputably a

foreign policy action and highlighted relevant precedent.  *See* Mem. in Supp. at 38–44.  That

precedent—ignored by Plaintiff in its Opposition, *see generally* Opp'n at 12–14—demonstrates that

Plaintiff's claims are non-justiciable.  *See, e.g.*, *Mobarez v. Kerry*, 187 F. Supp. 3d 85, 93 (D.D.C. 2016)

(non-justiciable political question where the "contention [was] that the Executive Branch has abused

its discretion—in APA terms—in refusing to evacuate U.S. citizens from Yemen . . . [thus]

necessarily involv[ing] second-guessing the 'wisdom' of [the State and Defense Departments']

discretionary determinations"); *Crockett v. Reagan*, 720 F.2d 1355, 1356-57 (D.D.C. 1983) (per curiam)

---

[6] The *Baker* court identified the following six factors to guide courts in evaluating the "murky and unsettled'" "'contours' of the political question doctrine," *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 44 (D.D.C. 2010):

> [1] textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of [the] respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker*, 369 U.S. at 217.

(barring a suit to enjoin security assistance  under the FAA due, in part, to the political question
doctrine); *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 983 (9th Cir. 2007) (refusing to decide a challenge to
a defense contractor's sales under the AECA because doing so would require the court to "intrude
into our government's decision to grant military assistance to Israel"); *Abusharar*, 77 F. Supp. 3d at
1006-07 (dismissing a suit to enjoin military assistance to Israel based on the State Leahy Law, in
part, given the political question doctrine).  In the interest of brevity, Defendants will not repeat
their prior arguments, but instead solely rebut the few positions made by Plaintiff in its Opposition.
For the reasons outlined in the Motion, however, the Court should dismiss Plaintiff's suit on non-
justiciability grounds.  *See* Mem. in Supp. at 38–44.

*First*, Plaintiff summarizes Defendants' position as being that the President has "exclusive
constitutional power over foreign policy or national security," presumably in response to
Defendants' arguments regarding the first *Baker* factor (*i.e.*, whether there has been a "textually
demonstrable constitutional commitment of the issue to a coordinate political department," *Baker*,
369 U.S. at 217).  Opp'n at 12.  As already discussed in the Motion, however, the Constitution
generally commits foreign policy and national security decision-making "to the political branches of
government" (meaning, to both the Executive and Legislative branches).  *Schneider v. Kissinger*, 412
F.3d 190, 195 (D.C. Cir. 2005).  And, the Supreme Court itself "has described the President as
possessing 'plenary and exclusive power' in the international arena and 'as the sole organ of the
federal government in the field of international relations.'"  *Id.* at 195 (quoting *United States v. Curtiss–
Wright Exp. Corp.*, 299 U.S. 304, 320 (1936)).  The first *Baker* factor therefore decisively weighs in
favor of the political question doctrine's application here, and acknowledging that—in accordance
with the precedent identified by Defendants previously, Mem. in Supp. at 40–41—does not equate

to the delivery of a "blank check power" to the Executive Branch, Opp'n at 12.  To conclude otherwise would call into doubt well-established precedent regarding the exercise of Executive Branch authority in the foreign policy and national security arenas.

*Second*, although Plaintiff wishes to frame its request otherwise, through pursuing this suit Plaintiff is asking the Court to "second-guess" decisions by the Executive and Legislative branches of government regarding the mechanism for transferring the A-29 Aircraft to Nigeria.  Opp'n at 12.  Plaintiff is not, as it supposes, "asking the judiciary to honor statutes enacted by Congress," *id.*, first because the statutes Plaintiff contend need to be honored (the Leahy Laws) do not apply here, and, in any event, the challenged actions are foreign policy judgments reserved to the political branches.  As alleged by Plaintiff itself, *see generally* Compl; *see also* Mem. in Supp. at 29, note 13, and given the publicly available information regarding the transfer of the A-29 Aircraft, DSCA Press Release; 163 Cong. Rec. S. 4753, 4754-55 (Aug. 2, 2017); Arms Sales Notification, 82 Fed. Reg. 40,757, 40,757-59 (Aug. 28, 2017), that transfer constituted a foreign military sale and not "assistance" or a use of "amounts made available to [DoD]."  22 U.S.C. § 2378d(a); 10 U.S.C. §362(a).  In effect, therefore, Plaintiff is asking the Court to force the application of the Leahy Laws to a scenario—a direct sale— where Congress did not intend them to apply.  *See* Mem. in Supp. at 4–7, 28–30, 38–44.  There was no need *or requirement* for Defendants to invoke statutory exceptions to or a waiver from the Leahy Laws, and Plaintiff's confusion about the applicability of those laws, Opp'n at 12–13, cannot itself create such an obligation.  Moreover, asking the Court to do so is tantamount to asking for a substitution of the Court's judgment for that of the Executive and Legislative Branches regarding the process for administering a foreign military sale, and whether the United States should furnish defense articles to Nigeria and do so as a direct sale or through assistance.

16

*Third*, although Plaintiff feels otherwise, analogous precedent demonstrates that this type of policy decision—whether to implement a sale of the A-29 Aircraft and if so by what statutorily available mechanism—depends on the application of value judgments in the foreign policy space "that defy judicial application[.]'" *Harbury v. Hayden*, 522 F.3d 413, 419 (D.C. Cir. 2008) (quoting *Baker*, 369 U.S. at 211); *see also El-Shifa*, 607 F.3d at 840. Just as there is no "constitutional test for what is war," *see Campbell v. Clinton*, 203 F.3d 19, 25 (D.C. Cir. 2000) (Silberman, J., concurring), there are no judicially manageable standards to determine whether Defendants adequately considered national security and foreign policy interests of the United States in selling military aircraft to Nigeria. Further, though Plaintiff asserts otherwise, given the decades-long foreign policy decisions that underpin the choice to sell the A-29 Aircraft to Nigeria, *see* Mem. in Supp. at 42–43, the Court supplanting its views here would express a "lack of [the] respect [that is] due [to] coordinate branches of government" (the fourth *Baker* factor) and potentially embarrass "multifarious pronouncements by various [Executive] departments" (the sixth *Baker* factor). *See Baker*, 369 U.S. at 217; *see also* Mem. in Supp. at 42–44.

*Lastly*, despite Plaintiff attempting to rely on *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012), as explained in the Motion that case is distinguishable. *See* Mem. in Supp. at 39, note 18. There, the Supreme Court found the courts were not asked to supplant the political branches' foreign policy decision because the plaintiff requested the enforcement of a specific statutory right. *Zivotofsky*, 566 U.S. at 196. No such statutory right is present here—as already discussed, the Leahy Laws are not applicable here, and even if they were Plaintiff has no private right of action to enforce their terms. *See* Mem. in Supp. at 4–7, 25–30. And, *Zivotofsky* involved a question of whether Congress had enacted a statute that intruded upon the President's Article II

17

powers, and not a political question, 566 U.S. at 196-97—a distinct issue within the Court's purview. Here, Plaintiff presents no claim that the statute violates the separation of powers. Rather, unlike in *Zivotofsky*, Plaintiff seeks to overturn the foreign policy decisions of the Executive and Legislative Branches. That request cannot survive application of the *Baker* factors, and the Court should dismiss this matter as non-justiciable given the political question doctrine, as did the *Abusharar* court when faced with a similar question. *See* 77 F. Supp. 3d at 1006-07; *see also* Mem. in Supp. at 38–44.

### V. The Court Should Decline to Provide Discretionary Relief.

Plaintiff also urges the Court to disregard Defendants' request that, even if Plaintiff's claims are justiciable, the Court nevertheless should decline adjudication as the relief sought is discretionary and this matter involves sensitive foreign policy issues. *See* Opp'n at 14; Mem. in Supp. at 44–45 (citing *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 207–08 (D.C. Cir. 1985) (Scalia, J.)). Plaintiff argues that *Sanchez-Espinoza* is inapplicable because "[t]here, Congress had not specifically spoken by statute to the issue in dispute, whereas here Congress through the Leahy Laws has spoken directly to the foreign policy in question." Opp'n at 14. As discussed above and in Defendants' Motion, however, neither Plaintiff's allegations nor the material publicly available to the Court demonstrate the applicability of the Leahy Laws; consequently, Congress has not "spoken by statute" in the way imagined by Plaintiff. Rather, like in *Sanchez-Espinoza*, the decision to sell the A-29 Aircraft to Nigeria here involves foreign policy issues beyond the proper purview of the Court's authority to provide discretionary relief. 770 F.2d at 208. And, though Plaintiff suggests otherwise, it is not possible for a court to weigh a foreign policy decision by considering the number of foreign nations involved. Opp'n at 14. Such an argument demonstrates not only Plaintiff's belief that its foreign policy views should be supplanted for those of the Executive Branch—a position routinely rejected

in case law, *see* Mem. in Supp. at 38–45—but also a misunderstanding of the complexity involved in foreign policy decision making generally, which implicates the interests of many nations.  In sum, Plaintiff's arguments regarding the applicability of *Sanchez-Espinoza* here misapply all of the pertinent law and are thus unavailing.  In the event the Court reaches this question, the Court should withhold any discretionary relief.

## CONCLUSION

For the foregoing reasons, and for the reasons otherwise detailed in Defendants' Motion, the Court should dismiss the case.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

*/s/ Kristin Taylor*
KRISTIN A. TAYLOR
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
(202) 353-0533 (direct)
(202) 616-8470
kristin.a.taylor@usdoj.gov

*Counsel for Defendants*

DATED: December 22, 2021

19

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 22, 2021, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send a notification

to counsel of record.

> _/s/ Kristin Taylor_
> Kristin Taylor
> Trial Attorney
> U.S. Department of Justice
> Civil Division, Federal Programs Branch
> 1100 L St. NW
> Washington, DC 20005
> (202) 353-0533 (direct)
> (202) 616-8470
> kristin.a.taylor@usdoj.gov