**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INDIGENOUS PEOPLE OF BIAFRA,<br><br>               Plaintiff,<br><br>    v.<br><br>ANTONY BLINKEN, Secretary of State, and<br>LLOYD AUSTIN, III, Secretary of Defense,<br>in their official capacities.<br><br>               Defendants. | Civil Action No. 21-2068 (JMC) |

## <u>MEMORANDUM OPINION</u>

In 2017, President Donald Trump approved the sale of twelve A-29 Super Tucano Aircraft to the government of Nigeria.[1] About four years later, the Biden administration delivered the first six of those aircraft. Plaintiff, an organization going by the name of Indigenous People of Biafra (IPOB), filed this action on behalf of its members, seeking an injunction that would bar the delivery of the remaining six aircraft and direct Defendants to seek the return of the six that were already delivered. This matter is before the Court on Defendants' Motion to Dismiss for lack of standing and for failure to state a claim.

According to IPOB's Complaint, the Biafran people—a religious and ethnic minority living in Nigeria—have suffered for decades at the hands of a remote and hostile government. One

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

can imagine their dismay upon learning that the United States would supply that government with military-grade aircraft. Now, IPOB turns to the federal courts for relief. But the relief it seeks is relief that no American court can provide. Because IPOB lacks standing to sue, intervention in this dispute is beyond the power granted to this Court by Article III of the United States Constitution. Accordingly, Defendants' Motion to Dismiss is GRANTED.

## I.   BACKGROUND

IPOB's Complaint alleges the following. In August 2017, President Donald Trump approved the sale of twelve A-29 Super Tucano Aircraft to the Nigerian Government. ECF 1 ¶ 32. In July 2021, the Biden administration delivered six of the twelve aircraft. ECF 1 ¶ 34. The Complaint alleges no specific plan to deliver the remaining aircraft, nor does it suggest when that delivery might occur.

IPOB is a community interest organization advocating for an independent Biafran nation, separate and independent from Nigeria. *Id.* ¶ 4. The Biafran people are a religious and ethnic minority living predominantly in southeastern Nigeria. *Id.* ¶¶ 18–20. According to IPOB, the Biafran people have for decades been subject to human rights abuses at the hands of the nation's majority government, *id.* ¶ 20, including, in recent years, several aerial bombardments of Biafran population centers, *id.* ¶¶ 24–26. IPOB brings this suit on behalf of ten anonymous IPOB members (referred to in the Complaint as John Does 1–10) who, IPOB alleges, "reside . . . on land historically occupied by Biafrans" and "reasonably fear[] death, bodily injury, or destruction of [their] property by [the] aircraft if the planes are delivered by the United States to the Government of Nigeria . . . to assist in the ongoing genocide of Biafrans." *Id.* ¶¶ 5–14.

IPOB—citing the "Leahy Amendments" to the Foreign Assistance Act, *see* 22 U.S.C. § 2378d and 10 U.S.C. § 2249e, and the Administrative Procedure Act, 5 U.S.C. § 706—seeks the following relief: (1) a declaratory judgment that the sale and delivery of the A-29 Aircraft violates

the Leahy Amendments; (2) an injunction prohibiting any further delivery of the aircraft to the Nigerian government; (3) an injunction ordering Defendants to seek the return of the aircraft that have already been delivered; and (4) costs. ECF 1 at 13. Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim. ECF 11. Plaintiff filed an Opposition, ECF 13, and Defendants filed a Reply, ECF 14.

## II.   LEGAL STANDARD

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). One element of this limitation is that, in order to bring suit, a plaintiff must have standing to sue. *Id.* The standing requirement is "built on separation-of-powers principles" and "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.* Because standing is a threshold question that "springs from the nature and limits of the judicial power," it is "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

To establish standing, a plaintiff "must state a plausible claim that [they have] suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015). The injury must be "concrete" and "particularized." *Clapper*, 568 U.S. 398 at 409. When a plaintiff relies on imminent (i.e., prospective) injury, it is not enough to allege that an injury is merely possible; rather, the plaintiff must establish that the injury is "certainly impending," *id.*, or, at the very least, that there is both a "substantial probability" and "substantially increased risk of harm." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015). "When the existence of one or more of the essential elements of standing depends on" the actions of a third party not before the court, "it becomes substantially more difficult to establish." *Am. Freedom L.*

*Ctr. v. Obama*, 821 F.3d 44, 48–49 (D.C. Cir. 2016). That is especially true where the third party is a foreign government. *See Cierco v. Mnuchin*, 857 F.3d 407, 419 (D.C. Cir. 2017) ("We have been particularly reluctant to find standing where the third party upon whose conduct redressability depends is a foreign sovereign."); *Fryshman v. U.S. Comm'n for Pres. of Am.'s Heritage Abroad*, 422 F. Supp. 3d 1, 8 (D.D.C. 2019) ("Federal courts are simply not well-suited to draw the types of inferences regarding foreign affairs and international responses to U.S. policy that Plaintiffs' theory of causation posits.").

An organization can establish standing "by showing either an injury to itself" (organizational standing) or "a cognizable injury to one or more of its members" (associational standing). *Kingman Park Civic Ass'n v. Bowser*, 815 F.3d 36, 39 (D.C. Cir. 2016). Where, as here, an organization seeks to establish associational standing, it must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

A motion to dismiss for lack of standing is evaluated under Fed. R. Civ. P. 12(b)(1). *Food & Water Watch*, 808 F.3d at 913. When reviewing a Rule 12(b)(1) motion, the Court must "treat the complaint's factual allegations as true" and grant "all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

## III.   ANALYSIS

Defendants move to dismiss IPOB's Complaint for lack of standing, among other reasons. ECF 11. They argue that, even assuming IPOB is a membership organization that is capable of

bringing suit on behalf of the John Does,[2] the Complaint does not allege that any of those individuals face an imminent injury that is fairly traceable to the challenged actions or redressable in court. *Id.* at 30–38. In response, IPOB accuses Defendants of minimizing the "atrocities" that have been suffered by the Biafran people, and "blithely" asking the Court "to throw the dice with the lives" of its members. ECF 13 at 8–9. IPOB urges the Court to take seriously the danger of the situation, going so far as to argue that "[s]tanding requirements should be relaxed . . . when human lives are at stake." *Id.* at 9.

As a preliminary matter, therefore, the Court is obligated to emphasize that—notwithstanding the gravity of IPOB's claims—the Court has no power to relax the requirements for standing in any case. *See Steel Co.*, 523 U.S. at 94–95. That is not a matter of discretion or deference; the Court's authority to intervene is strictly bound by the "cases and controversies" requirement of Article III of the United States Constitution. Accordingly, the Court must evaluate whether Plaintiffs have demonstrated standing as it would with any other complaint—by considering the three "prongs" of standing in turn.

## A. Injury in fact

IPOB maintains that the Nigerian government will respond to the delivery of the A-29 Aircraft by launching attacks against the persons and property of one or more of the John Does. ECF 1 ¶¶ 5–14, 35. That is a difficult contention to evaluate, for two reasons. First, IPOB provides no specifics about the John Does on whose behalf it claims to be bringing this action, except to say that each is an anonymous member who "reasonably fears" injury at the hands of the Nigerian

---

[2] Defendants do not concede this point. They argue that IPOB has failed to establish that it is a membership organization at all, that the John Does are members of IPOB, or that IPOB is representing the John Does' interests. *Id.* at 26–30. Because the Court finds that, even assuming IPOB is legitimately representing the John Does, IPOB has failed to show, as it must, that any of those individuals would have "standing to sue in their own right," *Hunt*, 432 U.S. at 343, the Court does not reach that issue.

government.[3] ECF 1 ¶¶ 5–14. Although it is possible, under some circumstances, to establish associational standing at the pleading stage without specifically naming the injured individuals, *see, e.g.*, *Young Am.'s Found. v. Gates*, 560 F. Supp. 2d 39, 49–50 (D.D.C. 2008), here the lack of any substantive detail about the John Does' circumstances makes it all but impossible to determine whether any of the John Does, as individuals, face imminent injury.

Another reason it is difficult to evaluate IPOB's alleged injury is that, in order to determine that IPOB's members face "death, bodily injury, or destruction of his property by A-29 Super Tucano military aircraft," ECF 1 ¶¶ 5–14, the Court would be required to predict what actions the Nigerian government will take in response to the United States' actions. Courts are hesitant to find injury when doing so would require "speculation about the decisions of independent actors." *Clapper*, 568 U.S. at 414. Here, the relevant actions are not those of just any third party, but those of a foreign government. The Court is not well-suited to such speculation in the realm of foreign affairs. *See Fryshman*, 422 F. Supp. 3d at 8 (D.D.C. 2019).

Even if the Court were to overlook the above deficiencies, it would still conclude that IPOB has failed to establish an imminent injury. Although past injuries may provide some evidence of "a real and immediate threat of repeated injury," *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983), allegations of past harm are not enough, without more, to establish future injury, *id.* at 105–06. The Court credits, as it must, IPOB's allegations describing the decades-long persecution of the Biafran people at the hands of the Nigerian government. *See, e.g.*, ECF 1 ¶¶ 20–26. Unfortunately, the Complaint offers little more. Indeed, the only non-conclusory allegation in the Complaint that speaks directly to *prospective* injury is a since-deleted Tweet from the Nigerian

---

[3] Other courts in this jurisdiction have previously ruled that "specific fear arising from a foreign policy . . . cannot constitute an injury-in-fact without a concrete harm." *Bernstein v. Kerry*, 962 F. Supp. 2d 122, 127 (D.D.C. 2013).

President. ECF 1 ¶¶ 27–28. That is simply not enough, even considering the history of the Biafran people, to establish that IPOB's members face a "certainly impending injury." *Clapper*, 568 U.S. 398 at 409. Nor does the Complaint offer any reason to conclude that the delivery of the aircraft will lead to a "substantially increased risk of harm." *Food & Water Watch*, 808 F.3d at 914. Accordingly, the Court concludes that IPOB has failed to establish an injury in fact.

### B.  Causation

To show causation, a plaintiff must establish that "it is substantially probable that the challenged acts of the defendant, not of some absent third party, will cause the particularized injury of the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996). Where, as here, "the alleged injury flows not directly from the challenged agency action, but rather from independent actions of third parties," the plaintiff must show "that the agency action is at least a substantial factor motivating the third parties' actions." *Am. Freedom L. Ctr.*, 821 F.3d at 49. "The more attenuated or indirect the chain of causation between the government's conduct and the plaintiff's injury, the less likely the plaintiff will be able to establish a causal link sufficient for standing." *Ctr. for Bio. Diversity v. Dep't of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009).

Here, the alleged injury does not flow directly from the delivery of the aircraft, but from the actions of the Nigerian government. In order to conclude that Defendants' actions are the cause of an imminent injury to IPOB's members, the court would have to speculate as to whether the Nigerian government will decide to conduct additional aerial raids against Biafran population centers, whether aircraft supplied by the United States will be used to perform those raids, and whether those aircraft will cause particularized injury to the John Does that they would not otherwise suffer. *Cf. Bernstein v. Kerry*, 962 F. Supp. 2d 122, 129 (D.D.C. 2013) (finding no traceability where plaintiffs claimed foreign aid delivered to the Palestinian Authority and other

non-governmental groups in the West Bank and Gaza would lead to increased fear of terrorist attacks). Even assuming that the Court could find standing based on such an attenuated chain of causation, the Complaint contains no allegations to support any of those conclusions. For example, the Complaint is silent as to the capabilities of the A-29 Aircraft as compared to those already in Nigeria's Airforce, or why the government would be likely to use those aircraft to conduct raids against Biafrans in the regions where the John Does reside.

Further undermining causation are the Complaint's numerous allegations of past abuse—including several aerial raids conducted against the Biafran people in recent years. By definition, any injury that would have occurred regardless of the delivery of the A-29 Aircraft is not caused by that delivery. Here, IPOB's allegations of longstanding persecution actually lend support to the contrary proposition that any injuries inflicted on its members would have occurred even in the absence of the challenged conduct. That further attenuates the chain of causation. *Cf. Fed. Forest Res. Coal. v. Vilsack*, 100 F. Supp. 3d 21, 39–40 (D.D.C. 2015) (finding that a pre-existing downward trend in the amount of timber harvested clearly undermines plaintiffs' standing argument by nullifying any assertion that the challenged action is the cause of the decline). Accordingly, the Court concludes that IPOB has failed to establish that the injuries suffered by the John Does would be fairly traceable to the challenged conduct.

### C. Redressability

To show redressability, a plaintiff must establish that there is a "substantial probability that if the court affords the relief requested, the injury will be removed." *Cato Inst. v. SEC*, 4 F.4th 91, 94–95 (D.C. Cir. 2021). Redressability and causation are closely linked, particularly where the requested relief is an injunction. After all, if a plaintiff cannot demonstrate that the challenged conduct is the cause of their injury, there is no reason to conclude that an injunction barring that

conduct would prevent the injury. Thus, for the same reasons the Court cannot say that supplying the A-29 Aircraft will cause an injury to IPOB's members that would not have otherwise occurred, it cannot conclude that preventing (or even undoing) the delivery of the aircraft would prevent it.

Moreover, even if the Court were to determine that it had the legal authority to overrule a foreign policy decision made by the political branches, the six aircraft that have already been delivered to the Nigerian government can only be recovered if Nigeria agrees to return them. "Courts do not lightly speculate how independent actors not before them might exercise their . . . discretion," *West v. Lynch*, 845 F.3d 1228, 1237 (D.C. Cir. 2017), particularly when the independent actors are foreign sovereigns over whom the Court exercises no authority, *Cierco*, 857 F.3d at 419. The Court has no tools at its disposal to compel the Nigerian government to return the aircraft. And, although IPOB points to the "vast leverage" the political branches might use to pressure the Nigerian government to return the aircraft, ECF 13 at 10, the successful recovery of the aircraft would still rely on Nigeria's decision to comply. In other words, even were the Court to grant the relief IPOB requests, IPOB has not established that there is a "substantial probability" that the relief would result in the removal of its injury. IPOB has given the Court no reason to believe that Nigeria cannot do with six planes what it would have done with twelve. And any argument that Nigeria would voluntarily return the aircraft is pure conjecture. "When conjecture is necessary, redressability is lacking." *West*, 845 F.3d at 1237.

## IV.   CONCLUSION

Because the Court finds that IPOB lacks standing to sue, the Court grants Defendants' Motion to Dismiss. Having determined that IPOB lacks standing, the Court need not reach Defendants' other arguments that IPOB has failed to state a claim.

An Order consistent with this Memorandum Opinion is issued separately.

**SO ORDERED**.

DATE: October 31, 2022

_____
Jia M. Cobb
U.S. District Court Judge